IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 13, 2013 Session

## JOSEPH LAMONT JOHNSON, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2004-A-273      Steve Dozier, Judge**

**No. M2012-02310-CCA-R3-PC- Filed February 27, 2014**

The petitioner, Joseph Lamont Johnson, was convicted of two counts of aggravated robbery, one count of aggravated assault, and one count of felony evading arrest. The trial court then reduced one of the aggravated robbery convictions to aggravated assault pursuant to *State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003) and sentenced the petitioner to an aggregate sentence of fifty-four years. The petitioner's convictions and sentences were affirmed on appeal. *State v. Johnson*, No. M2007-01644-CCA-R3-CD, 2009 WL 2567729, at *1 (Tenn. Crim. App. Aug. 18, 2009). The petitioner brings this post-conviction action alleging that he received the ineffective assistance of counsel in that: (1) trial counsel failed to convey a plea offer or inform the petitioner regarding his potential exposure; (2) trial counsel did not adequately investigate the case; (3) trial counsel performed deficiently by not moving to dismiss one of the aggravated robbery counts; (4) trial counsel performed deficiently by not moving to suppress a witness's identification of the petitioner; (5) appellate counsel performed deficiently by failing to challenge the petitioner's sentencing range; and (6) that the cumulative errors above resulted in the deprivation of the right to counsel. After a thorough review of the record, we conclude that the petitioner has failed to prove one or both prongs of a claim of ineffective assistance of counsel with respect to each claim, and we accordingly affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Joseph Lamont Johnson, Jr.

Robert E. Cooper, Jr., Attorney General & Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Rachel Sobrero, Assistant

District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The convictions in this case arose from the robbery of a Taco Bell in Nashville. *Johnson*, 2009 WL 2567729, at *1. According to testimony at trial, the petitioner, wearing a maroon hoodie, entered the restaurant shortly after it opened at 10:00 a.m. *Id.* A store employee, Ebony Moore, went to the back to alert the manager, Sam Alshinawa, that there was a robbery in progress. *Id.* According to the manager, the two returned to the dining area, where the petitioner grabbed Ms. Moore's hair and threatened to hurt her.[1] Throughout the incident, the petitioner kept his hand in his pocket, which appeared heavy, as though it contained a gun. *Id.* at *2. Mr. Alshinawa was frightened, and Ms. Moore pleaded for Mr. Alshinawa to help her. *Id.* The petitioner took between $200 and $300 dollars from the store, some of it in $5 and $1 bills, and he then demanded the surveillance video. *Id.* Because there was none, Mr. Alshinawa gave him a training video. *Id.* Mr. Alshinawa testified that the petitioner then slammed Ms. Moore's head into the wall. *Id.* The petitioner fled to the vehicle where the co-defendant, Willie Harris, was waiting. *Id.* He was followed by Mr. Alshinawa, who used a metal object to break several of the car's windows. *Id.*

The police arrived to see Mr. Alshinawa attack the car while the petitioner was still on the store's property. *Id.* After a high-speed chase during which the petitioner sped directly toward Officer Michael Windsor's police vehicle, swerving at the last minute, the petitioner and co-defendant abandoned their vehicle. *Id.* at *2-3. The co-defendant was captured with a little over $200 in twenties, tens, and fives. *Id.* at *3. The petitioner, who was wearing a maroon hoodie, had $42 in his pants. *Id.* at *3-4. A creek near the foot chase yielded an unspecified amount cash, a cell phone, and a driver's license and social security card belonging to the petitioner. *Id.* at *3. A Taco Bell video cassette was recovered from the petitioner's car. *Id.* at *4. The petitioner and co-defendant were returned to the store, where they were identified by Mr. Alshinawa. *Id.*

The petitioner testified on his own behalf at trial. According to the petitioner, he was under the influence of drugs and alcohol when he entered the store. *Id.* Because no one was present to wait on him, he lay on the counter. *Id.* Eventually, Mr. Alshinawa pushed his head, which escalated into "scuffling." *Id.* As the petitioner exited the store, he was

---

[1]Ms. Moore did not testify at trial.

-2-

followed by Mr. Alshinawa, who began to break the car windows with a metal pipe. *Id.* The petitioner's testimony was that Mr. Alshinawa then shouted, "Is this what you want?" and threw the videotape into the car. *Id.* The petitioner then recounted the car chase, noting that a police car swerved in front of him and he had to take evasive action. *Id.* at *4-5.

The jury found the petitioner guilty of two counts of aggravated robbery, one count of aggravated assault, and one count of evading arrest. However, the trial court, citing *Franklin*, 130 S.W.3d at 796, reduced the conviction for the aggravated robbery of Ms. Moore to aggravated assault, concluding that since only store property had been taken, the evidence did not support more than one conviction for aggravated robbery. *Id.* at *5. The trial court sentenced the petitioner to twenty-eight years as a Range III, persistent offender for the aggravated robbery conviction. The court sentenced the petitioner as a Range II, multiple offender to eight years for one aggravated assault, ten years for the other, and to eight years for the evading arrest conviction. The trial court ordered that the sentences be served consecutively for an aggregate term of fifty-four years. *Id.* at *1. After trial, the petitioner grew dissatisfied with his retained attorney. He was appointed new counsel, and appellate counsel filed and pursued his direct appeal. This Court affirmed his convictions and sentences.

The petitioner filed a timely pro se petition for post-conviction relief. Counsel filed an amended petition on behalf of the petitioner, and the post-conviction court held an evidentiary hearing.

The petitioner testified that trial counsel represented him for thirteen months, during which time, with the exception of trial counsel's hiring and of the trial, he never saw his attorney. The petitioner introduced a record of his jail visits which covered the duration of his pre-trial incarceration and in which trial counsel's name never appears. The petitioner testified he had eight or nine appearances in court prior to his trial date, but trial counsel never spoke to him about the case in the holding areas. Trial counsel did not provide him with discovery, as they had "no communication." Trial counsel also failed to provide him with street clothing for the jury trial. The petitioner testified that he was not aware that he would be on trial until the morning the trial began, that he did not have a chance to contact his family or get clothing for trial, and that a court officer was looking for clothing for him on the morning of trial. Counsel did not have an opening statement, did not have any prepared questions written down in anticipation of examining witnesses, and did not take petitioner's suggestions for questions to ask witnesses. The petitioner stated that his trial counsel did not investigate or interview any of the State's witnesses. He testified that, had trial counsel interviewed Ms. Moore, she would have refuted Mr. Alshinawa's statements regarding the assault against her. According to the petitioner, neither the State nor his attorney subpoenaed her, and Ms. Moore was not even present in the Taco Bell.

The petitioner also asserted that trial counsel never conveyed the State's plea offer to plead guilty to the charges and be sentenced to twenty years as a Range II offender. Furthermore, trial counsel never informed him that he could be facing an aggregate sentence of over fifty years. The petitioner testified that, had he known about the potential punishment and the offer, he would have accepted the offer. On cross-examination, however, he maintained he had not committed any robbery, but when asked if he would have pled guilty to the crime, he answered, "It's possible, if I knew what I was facing going to trial. It's highly likely, yes, I would have accepted that 20[-]year deal." He elaborated that if he had known the range of sentencing he faced, he would have taken the twenty years. He also noted that he had pleaded guilty on other robbery charges because he was guilty. The petitioner testified, as further corroboration that trial counsel had not told him the range of punishment he faced, that trial counsel at the sentencing hearing told the trial court that he did not know how the petitioner's federal bank robbery conviction would be classified for the purposes of establishing range.

The petitioner also testified that he believed his counsel was deficient in not moving to have one of the aggravated robbery counts dismissed, because while the indictment alleged he had taken property from two separate people, the proof showed that he took money only from the business. The petitioner testified that he was ultimately sentenced for aggravated assault as a lesser-included offense of aggravated robbery.

The petitioner next alleged his counsel was deficient in failing to file a motion to suppress evidence of the show-up identification. Trial counsel did not advise him that if he testified, he would essentially be conceding issues of identification by putting himself at the scene of the crime.

The petitioner further alleged that his trial counsel erred in allowing the trial court to count his two prior state convictions for aggravated robbery separately, insisting that, as they were both committed on the same day, they should only count as one conviction for the purposes of establishing a sentencing range. The petitioner's appellate counsel refused to raise this as an issue on appeal.

Detective Norris Tarkington, who investigated the crime and was a witness at the petitioner's trial, testified that he did not recall trial counsel ever contacting him to discuss the facts of the case or the identification. Regarding the show-up identification, Detective Tarkington testified that the defendant was standing next to a police vehicle in handcuffs that were not readily visible and that he then brought the witnesses individually to make an identification. He testified that at the time, it was standard procedure to conduct a show-up if a suspect were apprehended within two hours of a crime. He elaborated on cross-examination that the petitioner had been continuously in sight of police from the time

-4-

he left the parking lot until the time he was apprehended. Detective Tarkington recalled that Ms. Moore told him that the petitioner had grabbed her by the hair and told her to open the cash register, then pulled her to the back. He did not recall Mr. Alshinawa saying that Ms. Moore was forced to lie on the floor or that she was not dragged but walked to the back of the store alone to tell him about the robbery. Mr. Alshinawa had also not told him that the petitioner slammed Ms. Moore's head into a steel door or that he and the petitioner had begun shoving each other. Detective Tarkington did not recall any prosecutor contacting him regarding finding Ms. Moore.

David Hopkins, who represented the co-defendant at trial, testified that he made a few attempts to contact the petitioner's attorney prior to trial to discuss trial strategy, but he was unsuccessful. Close to the time of trial, he was able to speak with petitioner's attorney and attempted to arrange a meeting, but they were unable to do so. Mr. Hopkins testified that on the day of trial, he had arrived early with clothing for his client, but trial counsel did not arrive on time, forcing the parties to wait for him. Trial counsel then asked to see Mr. Hopkins's copy of the discovery materials and started to review them. As he flipped through the discovery, he asked Mr. Hopkins a question similar to: "What's this case about?" Mr. Hopkins testified that he did not speak to trial counsel because the jury pool was already being brought into the courtroom, but trial counsel "seemed serious" in asking the question.

The petitioner's appellate counsel testified that he did not challenge the sentencing as a Range III offender because he believed the petitioner was sentenced within the correct range, having committed three prior Class B felonies and one Class C felony.

Trial counsel agreed that the petitioner had eight or nine court appearances and testified that they had "multiple discussions" during which the petitioner asserted that he had been at the Taco Bell, but the robbery was a misunderstanding and he had committed no crime. The petitioner had maintained his innocence' and "he wasn't going to take any pleas." Trial counsel asserted that, while he did not give the petitioner the State's letter, he did convey the plea offer, and the petitioner rejected it. Trial counsel testified that, "basically they're wanting him to plead to a lot of time, and he said, well, I'm innocent, I didn't rob anybody, I didn't do it. He always said the same thing … .But in any event, even prior to the trial, he basically said that I'm not taking a deal of any sort."

He acknowledged that he did not know at the time of the sentencing hearing how the petitioner's federal bank robbery conviction would be classified in Tennessee. He testified that he believed the classification was usually decided by the trial court, using analogous state crimes. He testified he did not look at the petitioner's prior convictions to determine if they were on the same day. Trial counsel testified that he did not think the petitioner

would get as lengthy a sentence as he did. Regarding discussions with the petitioner about sentencing, trial counsel testified as follows:

> Q. Okay. Did you ever have a discussion about the range of punishment he was facing?
>
> A. No, because I don't think we discussed what the total range was. I think we talked about what he could get for each individual offense, and mainly we were focused on the aggravated robbery portion, because I told him he could get eight to 30 on those cases. But we didn't talk about if the cases got split up and if they were consecutive and you know, everything could come down. We were mainly focused on the class B felonies.

Trial counsel testified that the defense theory of the case was that the petitioner lacked intent to rob the victims and that Mr. Alshinawa had been disrespectful to the petitioner, who was a customer, and the two became involved in a physical altercation. He testified that he did not move to dismiss the second count of aggravated robbery because he believed that the issue of a second robbery was a jury question. He testified that he didn't challenge the show-up both because the police had followed the petitioner from the actual scene of the crime and because the petitioner acknowledged being at the Taco Bell.

Trial counsel acknowledged not interviewing any of the State's witnesses, but stated he spoke with the police officers and detectives regarding the case. He stated that he did not give the petitioner a copy of the discovery because the petitioner was in jail, and he didn't want the documents available to other inmates. However, he asserted he did discuss the discovery with the petitioner. He acknowledged looking at Mr. Hopkins's discovery, but stated he did so because the photographs were of better quality than his copy. He testified that he did ask what the case was about but did so as a joke. He also testified that he had been in contact with the petitioner's family regarding bringing clothing, and that he was late because he was in the building trying to find clothing for the petitioner with the aid of the court officers.

Trial counsel admitted that he had received two public censures from the Board of Professional Responsibility in 2004 and 2006 for neglecting and failing to prepare a child support case and for filing a late notice of appeal and brief in another case. He testified that the petitioner had also filed a complaint against him but that the complaint had been found to be without merit.

The post-conviction court denied the petition. The court found that "Although trial counsel did not visit the petitioner as often as he should have," the petitioner could not show prejudice because he offered no evidence of a viable defense that could have been pursued. The post-conviction court further found that there was no deficiency or prejudice in counsel's not moving to dismiss the second aggravated robbery charge. The post-conviction court found no merit in the issue that trial counsel should have challenged the show-up, noting that there was no evidence it was prejudicial or suggestive, and no prejudice was shown. The post-conviction court denied relief on the issue of counsel's failure to interview or call Ms. Moore, noting that she could not be found for the hearing and that there was no prejudice. The post-conviction court also accredited trial counsel's testimony that he did convey the plea offer to the petitioner, who refused it, and it declined to find prejudice on the issue. The post-conviction court denied relief on the sentencing issues, finding that the convictions were not subject to the twenty-four hour merger rule and that there was accordingly no deficiency or prejudice.

## ANALYSIS

### I. Standard of Review

Tennessee's Post-Conviction Procedure Act provides for relief when a conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States. T.C.A. § 40-30-103 (2010). To obtain post-conviction relief, a petitioner must prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f). Clear and convincing evidence is evidence "which leaves 'no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning the credibility of the witnesses, the weight and value of evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). The post-conviction court's decisions on questions of law or mixed questions of law and fact, such as a claim of ineffective assistance of counsel, are reviewed de novo. *Nichols v. State*, 90 S.W.3d 576, 586 (Tenn. 2002).

The petitioner asserts that various errors committed by his trial counsel deprived him of his right to counsel under the Sixth Amendment to the United States Constitution and

article I, section 9 of the Tennessee Constitution.  In order to establish that he received the ineffective assistance of counsel, the petitioner must show both that his lawyer's performance was deficient and that the deficiency resulted in prejudice. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008).  Deficiency can be shown if the petitioner demonstrates that his attorney's services were not "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).   A petitioner must demonstrate deficiency by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Felts v. State*, 354 S.W.3d 266, 276  (Tenn. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   A reviewing court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

To prevail on the prejudice prong, the petitioner "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn*, 202 S.W.3d at 116).  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*  A claim may be denied for failure to prove either prong, and a court need not address both if the petitioner has failed to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

## II.  Ineffective Assistance in Plea Negotiations

The petitioner's first claim is that trial counsel performed deficiently in failing to render effective assistance during plea bargaining.  The petitioner testified that trial counsel never conveyed the State's offer to sentence him concurrently as a Range II offender to an effective twenty-year sentence.  Although trial counsel acknowledged he did not give the State's offer letter to the petitioner, he testified that he "did relay the offer, as we had to, and he said he was not taking any time for this."  In what became essentially a contest of credibility in which the petitioner asserted he did not know of the offer and trial counsel asserted he did, the trial court accredited the testimony of trial counsel and found that the offer was conveyed.

The State's offer was made on December 2, 2004.  The petitioner's trial began on December 6, 2004.  In the intervening days, trial counsel's name continued to remain conspicuously absent from the roster of visitors whom the petitioner received in prison. Testimony at the hearing established that trial counsel was late to court on the day of trial, and the petitioner testified that his time before trial was taken up with the issue of finding adequate clothing and that the jury was in the box by time he was brought into the courtroom. The petitioner asks us to infer, from these facts, that the offer was not conveyed to him, and

he asks us to conclude that the evidence preponderates against the trial court's finding that trial counsel conveyed the plea offer. However, we cannot say that the fact that trial counsel did not visit the prison precludes the possibility that he conveyed the offer in some other way. Neither post-conviction counsel nor the State inquired into the minutiae of the manner in which the offer was conveyed, and although the evidence suggests that trial counsel did not conveyed the offer in person, there is no evidence regarding the possibility that it was conveyed in some other manner; there is simply the testimony of counsel that he conveyed the offer and that of the petitioner that counsel did not do so. Ultimately, then, the question remains one of credibility. Questions concerning the credibility of the witnesses, the weight and value of evidence, and the factual issues raised by the evidence are resolved by the post-conviction court. *Honeycutt*, 54 S.W.3d at 766-67. Furthermore, a post-conviction court's factual determinations are conclusive unless the evidence preponderates otherwise, *Vaughn*, 202 S.W.3d at 115. We conclude that the evidence does not preponderate against the post-conviction court's determination that the offer was conveyed.

However, the testimony of trial counsel and the petitioner did not conflict regarding another aspect of the plea offer: that trial counsel never told the petitioner that, if he elected to reject the offer, his sentences could be run consecutively. The State asks us to consider this issue waived because, although the petition alleged that trial counsel did not convey a plea offer, it did not allege that trial counsel's communication of the plea offer was defective, specifically in that trial counsel did not alert the petitioner to the aggregate sentence he faced. *See* T.C.A. § 40-30-110(c) ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."). The petition does allege that trial counsel never came to see the petitioner, never spoke to him about his case, had not adequately investigated the petitioner's classification for sentencing purposes, and never spoke to him regarding a plea offer. While the petition does not specifically allege that trial counsel was deficient in not conveying the aggregate sentence the petitioner faced, we choose to examine the issue on the merits.

The *Strickland* standard for determining whether a petitioner received the ineffective assistance of counsel applies in plea negotiations as well as during trial. *Missouri v. Frye*, 132 S. Ct. 1399, 1407, 1409 (2012)*; see Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Accordingly, "counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S. Ct. at 1407. A fair trial does not correct deficient performance because of "the reality that criminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Accordingly, "it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Frye*, 132 S. Ct. at 1407.

In *Magana v. Hofbauer*, 263 F.3d 542, 549-50 (6th Cir. 2001), as in the petitioner's case, trial counsel testified that he had never told the accused that his sentences could be run consecutively. In *Magana*, trial counsel in fact had assured his client that the sentences would be concurrent and that the most he could be sentenced to after trial was ten years, which was equivalent to the State's plea offer. *Id.* The Sixth Circuit concluded that trial counsel's "gross misadvice to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms." *Id.* at 550; *see also Wooten v. Raney*, 112 Fed. App'x 492, 496 (6th Cir. 2004) (noting that "in some cases the failure to inform a defendant correctly of his sentencing exposure at trial may constitute ineffective assistance of counsel…" but rejecting the claim based on prejudice); *Grindstaff*, 297 S.W.3d at 221 (quoting *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) for the proposition that "the failure of counsel to 'provide professional guidance ... regarding ... sentence exposure prior to a plea may constitute deficient assistance'"). "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *U.S. v. Wolfe*, No. 2:11-CR-33, 2012 WL 1957427, at *10 (E.D. Tenn. May 31, 2012) (quoting *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003)). Based on the unconflicting testimony of the petitioner and trial counsel, trial counsel did not alert the petitioner to his potential sentencing exposure if he proceeded to trial. Furthermore, trial counsel's testimony seemed to suggest that he had told the petitioner he could get as little as eight years' imprisonment for the aggravated robbery charge, which would be the minimum for a Range I offender. We conclude that trial counsel's performance was deficient.

The Supreme Court has recently addressed what a petitioner must prove to show prejudice when alleging that counsel's deficient performance resulted in the rejection of a more favorable plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385; *see also Magana*, 263 F.3d at 551-52 (predating *Lafler* and

concluding that the petitioner established a reasonable probability that he would have accepted the plea based on his own testimony, on the large disparity between the ten-year offer and his forty-year exposure, and on trial counsel's testimony that the petitioner stated, after receiving the misadvice, that he would reject the offer "[u]nder those circumstances"). The Sixth Circuit does not require a defendant to support his own assertion that he would have accepted the offer with additional objective evidence. *Griffin v. U.S.*, 330 F.3d 733, 737 (6th Cir. 2003); *Smith*, 348 F.3d at 551.

In this case, the disparity between the offer, which was for twenty years' imprisonment, and the petitioner's exposure, which was fifty-eight years, is large. *See U.S. v. Morris*, 470 F.3d 596, 602 (6th Cir. 2006) ("This Court has given special weight to significant disparities between penalties offered in a plea and penalties of a potential sentence in determining whether a defendant suffered prejudice by not accepting a plea offer."). Furthermore, the State's case against the petitioner was particularly strong. Nevertheless, there is also evidence which suggests the petitioner would not have accepted any plea offer. First and most tellingly, the petitioner's own testimony on the issue was equivocal, as he testified at times that he would have taken the offer and at other times that it was "highly likely" or "possible" that he would have. Second, the petitioner maintained his innocence throughout the trial and post-conviction proceedings. The petitioner's testimony was that no robbery took place and that the store manager fabricated the robbery after an argument escalated into a physical confrontation. *But see Griffin*, 330 F.3d at 738 (noting that "declarations of innocence are therefore not dispositive on the question of whether [the petitioner] would have accepted the government's plea offer" and remanding for a hearing). Finally, petitioner's counsel testified that petitioner was adamantly opposed from the beginning to taking a plea offer, and he testified that the petitioner did not want to plead guilty because he steadfastly maintained that he was innocent of the crime. The post-conviction court "accredit[ed] the testimony of trial counsel that he did communicate the offer and that the petitioner was not interested in taking any plea." In light of the post-conviction court's factual finding that the petitioner was "not interested in taking any plea" and other evidence suggesting that the petitioner was not interested in plea bargaining, we conclude that the petitioner has failed to establish by clear and convincing evidence that he would have taken the twenty-year plea offer. Accordingly, the petitioner has not shown a reasonable probability that, but for trial counsel's failure to alert him to his potential sentencing exposure, the plea offer would have been presented to and accepted by the sentencing court. *See Smith v. State*, No. E2003-00655-CCA-R3-PC, 2004 WL 73267, at *7 (Tenn. Crim. App. Jan. 9, 2004) (declining to find prejudice stemming from an allegation that counsel did not discuss consecutive sentencing because the petitioner's testimony showed "that he wanted to prove his innocence and that he believed that he had a chance to be acquitted on all the charges").

### III. Failure to Investigate

The petitioner next asserts that he received the ineffective assistance of counsel at trial, in that trial counsel neglected to investigate the case, interview witnesses, or communicate adequately with him.

The petitioner, based on prison records which show trial counsel never visited him, asserts that his trial counsel never met with him or discussed the case with him prior to trial. Trial counsel testified that he met with the petitioner on the eight or nine occasions when the petitioner was in the courthouse, and that he discussed the case with the petitioner during those times, though sometimes only briefly. The trial court accredited trial counsel's testimony, although it acknowledged that trial counsel "did not visit the petitioner as often as he should have." The petitioner makes no allegation of prejudice in this regard or explanation of how the trial would have been different if trial counsel had held additional meetings with the petitioner. Accordingly, this issue is without merit.

The petitioner also challenges trial counsel's failure to interview witnesses, particularly Mr. Alshinawa and Ms. Moore. The petitioner urges that there were discrepancies between Mr. Alshinawa's testimony and his initial statement to the police, and that interviewing witnesses "may have produced even more." He particularly points to the fact that Mr. Alshinawa's initial statement to police apparently did not allege that the petitioner forced anyone to lie on the floor or that the petitioner slammed Ms. Moore's head into a door. However, the petitioner did not call Mr. Alshinawa at the post-conviction hearing to demonstrate any further inconsistencies in his testimony. When a claim of ineffective assistance of counsel is premised on counsel's failure to interview or call witnesses, the witnesses must be presented at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Pylant*, 263 S.W.3d at 869 (quoting *Black*, 794 S.W.2d at 757). This is because the court cannot speculate as to what a witness's testimony might have been. *Black*, 794 S.W.2d at 757. Presenting the witness allows the post-conviction court to determine whether that witness's testimony would have been credible, material, and admissible. *Pylant*, 263 S.W.3d at 869-70. Without the post-conviction testimony of Mr. Alshinawa and Ms. Moore, the claim is purely speculative and the petitioner cannot show prejudice. Accordingly, this claim is without merit.

The petitioner alleges trial counsel's performance was deficient in not preparing an opening statement or theory of defense. The petitioner also objects to counsel's performance in not challenging the discrepancies in Mr. Alshinawa's testimony at trial. However, the

petitioner can show no prejudice from these alleged shortcomings. Regarding counsel's opening statement, the petitioner has presented no proof regarding how the outcome of the trial would have been different had counsel's preparation been more thorough. Although the petitioner called Detective Tarkington at the hearing to testify about inconsistencies between Mr. Alshinawa's initial statement to the police and his trial testimony, the fundamentals of the witness's testimony – that the defendant entered the store, threatened Mr. Alshinawa and Ms. Moore with what appeared to be a gun in his pocket, and took money from the cash register – remained unchanged. Accordingly, he cannot show a reasonable probability that, but for any alleged errors, the result of the proceeding would have been different.

## IV. *Franklin* Claim

The petitioner next asserts that his trial counsel was deficient in failing to move to dismiss one of the two counts of aggravated robbery based on *State v. Franklin*, 130 S.W.3d 789 (Tenn. Crim. App. 2003). In *Franklin*, a robbery was committed in which two store employees were forced to hand over store property at gunpoint. *Id.* at 791. The defendant in *Franklin* was convicted of two counts of aggravated robbery, but this Court found that only one conviction for aggravated robbery could stand, as there was only one taking. *Id.* at 798. However, the second count was not dismissed; instead, it was reduced to the lesser included offense of aggravated assault. *Id.* In the petitioner's case, nearly the same series of events transpired. The petitioner was convicted of both counts, but one count was reduced to the lesser included offense of aggravated assault.

"The Double Jeopardy Clause has been interpreted as providing three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple *punishments* for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (emphasis added). As such, *Franklin* stands for the proposition that, if the proof supports only a single taking from the business, two *convictions* cannot stand. *See also State v. Anthony*, No. W2004-00255-CCA-MR3-CD, 2004 WL 2848380, at *7 (Tenn. Crim. App. Dec. 10, 2004) (reducing two out of four counts of aggravated robbery to aggravated assault when the defendant robbed one customer and the cash registers of three employees); *State v. Johnson*, No. W2002-00987-CCA-R3-CD, 2003 WL 22080778, at *11 (Tenn. Crim. App. Sept. 4, 2003) (modifying one conviction for especially aggravated robbery to aggravated assault where two store employees were shot during a robbery in which money was taken from the store). The State may, of course, charge certain crimes under alternative theories, and the petitioner offers no support for the proposition that, had the second aggravated robbery charge been challenged, the trial court would have been obliged to dismiss the count entirely. *See*, *e.g.*, *State v. Howard*, 30 S.W.3d 271, 275 n.4 (Tenn. 2000). Accordingly, the post-conviction court correctly found that trial counsel did

not perform deficiently in not moving to dismiss the second count and that there was no prejudice.

## V. Failure to File Motion to Suppress Identification Evidence

The petitioner next asserts that his trial counsel's performance was deficient because trial counsel did not move to suppress Mr. Alshinawa's identification of the petitioner when the petitioner was returned to the scene of the crime in handcuffs. "To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." *State v. Cribbs*, 967 S.W.2d 773, 794 (Tenn. 1998). If the identification was suggestive, the court must consider whether the identification was ultimately reliable. *State v. Biggs*, 211 S.W.3d 744, 749 (Tenn. Crim. App. 2006). A show-up, in which a witness is presented with either a single photograph or single suspect for the purposes of identification, is "inherently suggestive and unfair to the accused." *State v. Thomas*, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989). However, the practice is permissible when "the showup occurs as an on-the-scene investigatory procedure shortly after the commission of the crime." *Thomas*, 780 S.W.2d at 381. While presenting the suspect in handcuffs has been condemned, "a suspect in handcuffs does not establish that the show-up identification was impermissibly suggestive when reliability of the identification may be otherwise established." *Ross v. State*, No. W2008-01130-CCA-R3-PC, 2009 WL 2568202, at *9 (Tenn. Crim. App. Aug. 20, 2009); *see State v. Strickland*, No. M2002-01714-CCA-R3-CD, 2003 WL 22243440, at *13 (Tenn. Crim. App. Sept. 30, 2003) (concluding a show-up "was not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification" when it took place within an hour of the crime, at the scene, and as part of an on-the-scene investigatory procedure). Here, the victims summoned the police while the robbery was occurring, and the police arrived to see the petitioner and his co-defendant still in the parking lot, pursued by one of the victims. The petitioner initiated a high-speed chase during which he never left officers' line of sight up until his capture. He and the codefendant were apprehended with a substantial amount of cash, and the store video was found in their vehicle. Because the show-up was part of an on-the-scene investigatory procedure immediately after the commission of the crime, the identification was not subject to suppression.

Moreover, identity was substantially not at issue in the petitioner's case. *See Bowles v. State*, No. M2003-01740-CCA-R3-PC, 2004 WL 1656476, at *4 (Tenn. Crim. App. July 23, 2004) (concluding that counsel was not ineffective in failing to obtain DNA evidence when identity was not at issue). Counsel's actions must be evaluated in light of the information counsel receives from the accused. *Felts*, 354 S.W.3d at 277 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . ." (quoting *Strickland*, 466 U.S. at 691)). In the

case at bar, the petitioner never denied being on the scene or being the individual who became involved in a conflict with the store manager. *See Sadler v. State*, No. M2008-02853-CCA-R3-PC, 2010 WL 10968, at *5 (Tenn. Crim. App. Jan. 4, 2010) (rejecting post-conviction petitioner's claim that counsel was deficient in not alerting the petitioner that several witnesses were not able to identify him from a line-up when counsel testified that he shared the information and that identity was not at issue). Instead, he maintained that he was present in the Taco Bell as a customer and that the store manager initiated a confrontation with him and eventually assaulted him with a lead pipe. He denied feigning that he had a gun or robbing the store, and he explained that the manager had inexplicably thrown a video cassette into his car after breaking the window. As noted above, the petitioner fled the restaurant pursued by the victim, and he never left officers' line of sight during the ensuing chase. Mr. Alshinawa then identified the petitioner at trial. In these circumstances, trial counsel was not deficient for failing to move to suppress the identification, and the petitioner cannot show that, but for the alleged error, the result of the proceeding would have been different. *See Majors v. State*, No. M2011-02353-CCA-R3-PC, 2012 WL 3291801, at *4 (Tenn. Crim. App. Aug. 13, 2012) (concluding that counsel was not ineffective for failing to challenge show-up when victims made unequivocal identifications at trial). Accordingly, we conclude that the post-conviction court did not err in finding that trial counsel's performance was not deficient or prejudicial.

## VI. Sentencing Range

The petitioner's final allegation of deficient performance is the assertion that both his trial counsel and his appellate counsel failed to argue that he was sentenced under the version of Tennessee Code Annotated section 40-35-107(b)(4) in place in 2005 rather than 2003[2] and that he should not have been sentenced as a Range III offender for the aggravated robbery. The petitioner maintains that under *State v. Horton*, 880 S.W.2d 732 (Tenn. 1994) and Tennessee Code Annotated section 40-35-107(b)(4), his two prior state convictions for aggravated robbery should be treated as one conviction for the purpose of establishing range because they occurred within one twenty-four hour period. He argues that cases holding otherwise were decided after his sentencing hearing and cannot therefore be applied to his case.

In 2003, Tennessee Code Annotated section 40-35-107(b)(4) provided:

> Convictions for multiple felonies committed as part of a single
> course of conduct within twenty-four (24) hours constitute one

---

[2]Insofar as the petitioner alleges he was sentenced under the 2005 version of the Sentencing Act, his allegation is refuted by the appellate opinion on direct appeal. *Johnson*, 2009 WL 2567729, at *16 n.3.

(1) conviction for the purpose of determining prior convictions; however, acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct.[3]

The identical language appears in the 2003 version of Tennessee Code Annotated section 40-35-106, and the Sentencing Commission's comments to section 107 note that "[a]part from the numbers of prior felony convictions, the provisions of this section are the same as § 40-35-106 concerning multiple offenders." The Sentencing Commission's comments to Tennessee Code Annotated section 40-35-106, in turn, elucidate how the merger rule should be applied, and, more importantly, how violent crimes are excluded from the twenty-four-hour merger rule. As an example, the Commission notes that "if the defendant was convicted of robbing several people in the same store, such would constitute separate convictions for enhancement purposes for a new violation of the law." T.C.A. § 40-35-106 Sentencing Comm'n Cmts. (2003). Accordingly, the Sentencing Commission's comments indicate that the rule the petitioner complains of was already firmly established at the time of his crimes.

Neither does case law, either at the time of his crime or at the present time, support the petitioner's contention. *State v. Bailey*, No. 01C01-9507-CR-00220, 1996 WL 234083, at *2 (Tenn. Crim. App. May 9, 1996) (concluding that, while two prior attempted aggravated robberies were part of a single course of conduct, they also threatened bodily injury and there was no error in determining "that the two attempted aggravated robbery convictions qualified as separate prior convictions for the purpose of sentencing this Defendant as a multiple offender"); *accord State v. Middlebrook*, No. M2009-02276-CCA-R3-CD, 2011 WL 198689, at *6-7 (Tenn. Crim. App. Jan. 11, 2011) ("Following our review, we conclude that the statutory elements of robbery include a threat of bodily injury when the State is required to prove that the defendant committed the act through violence or by putting the person in fear."); *State v. Buchanan*, No. M2007-02870-CCA-R3-CD, 2008 WL 4467185, at *5 (Tenn. Crim. App. Oct. 6, 2008) ("Both robbery and aggravated assault contain elements that the defendant cause or threaten to cause bodily injury."); *see also State v. Baker*, 751 S.W.2d 154, 166 (Tenn. Crim. App. 1987) (rejecting, under prior statute, the claim that two robberies completed in twenty-four hours were part of a single course of conduct with no substantial change to the criminal objective).

Accordingly, we discern no error.

---

[3]This statute currently excludes from the twenty-four-hour merger rule felonies for which the statutory elements include serious bodily injury, bodily injury, threatened bodily injury, or threatened serious bodiliy injury to the victim, as well as aggravated burglary. T.C.A. § 40-35-107(b)(4) (2010).

## VII. Cumulative Error

Finally, the petitioner argues that trial counsel's cumulative errors deprived him of his right to counsel under the Sixth Amendment of the United States Constitution and under article I, section 9 of the Tennessee Constitution. "The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). The petitioner's argument fails because the doctrine is only applicable where the accused has established there was more than one error committed. *Id.* at 77; *see also Porter v. State*, No. M2012-01139-CCA-R3-PC, 2013 WL 1197730, at *12 (Tenn. Crim. App. Mar. 26, 2013) (quoting *Leonard v. State*, No. M2006-00654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. July 5, 2007) for the proposition that "[o]ur Court has previously noted that a Petitioner who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of counsel's errors"). The post-conviction court did not err in rejecting this argument.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court. However, we note that the judgment forms, while reflecting the petitioner's conviction offenses and the fact that he had a jury trial, do not have a check in the "Guilty" box. Under Tennessee Rule of Criminal Procedure 36, "[a]fter giving any notice it considers appropriate, the court may at any time correct clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission." This rule has also been applied when a defendant challenges the legality of the judgment. *Cantrell v. Easterling*, 346 S.W.3d 445, 449 (Tenn. 2011) (citing *Wilkerson v. Carlton*, No. E2007-02453-CCA-R3-HC, 2008 WL 4949227 (Tenn. Crim. App. Nov. 20, 2008)). Accordingly, we remand with instructions for the post-conviction court to correct the judgment sheets.

_____
JOHN EVERETT WILLIAMS, JUDGE