RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0291P (6th Cir.)
File Name: 01a0291p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RICHARD MAGANA,
      *Petitioner-Appellant,*

v.

GERALD HOFBAUER,
      *Respondent-Appellee.*

No. 99-2107

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-72839—Bernard A. Friedman, District Judge.

Submitted: April 25, 2001

Decided and Filed: August 28, 2001

Before: MARTIN, Chief Judge; MOORE, Circuit Judge;
O'MALLEY, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Vincent J. Leone, ASSISTANT ATTORNEY
GENERAL, HABEAS CORPUS DIVISION, Lansing,

---

[*] The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Michigan, for Appellee.   Richard Magana, Newberry, Michigan, pro se.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge.   Petitioner-Appellant Richard Magana appeals the district court's denial of his petition for habeas corpus relief.   Magana was convicted by a jury in Michigan state court of two drug offenses and sentenced to two mandatorily consecutive terms of ten to twenty years' imprisonment.  Magana's sole claim in his habeas petition is that he received ineffective assistance of counsel during the plea negotiation process.  Magana claims that his trial attorney advised him to turn down the government's plea offer based upon the attorney's erroneous belief that the maximum to which Magana could be sentenced upon conviction was two ten-year *concurrent* sentences. Magana asserts that if his trial attorney had correctly informed him that, if convicted, he would receive two statutorily mandated ten-to-twenty-year *consecutive* sentences, he would have accepted the government's plea offer.  For the following reasons, we **REVERSE** the district court's judgment.

## I. JURISDICTION

We have jurisdiction to hear Magana's appeal from the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2253.

## II. BACKGROUND

Magana was charged in September 1991 with three counts: possession with intent to deliver more than 50 but less than 224 grams of cocaine; conspiracy to possess with intent to deliver more than 50 but less than 224 grams of cocaine; and possession with intent to deliver marijuana.   Either "immediately" before or the day of trial, Magana's attorney, Rudolph Wartella received an offer to plea bargain from the

suffered by the defendant, a new trial was an inappropriate remedy for a defendant who had constitutionally deficient counsel during the plea negotiation process. *Id.* at 1208. Instead, we held that, as a remedy, the prosecution was free to offer the defendant another plea bargain, but that any plea offer in excess of the original offer must overcome a rebuttable presumption of prosecutorial vindictiveness. *See id*. at 1209. Accordingly, we **REVERSE** the district court's decision denying Magana's petition for habeas relief and **REMAND** this case to the district court to grant the writ of habeas corpus within ninety days, conditional upon a new plea hearing in state court at which Magana has the opportunity to consider, with counsel, the state's original plea offer. Should the state choose to offer Magana a plea in excess of ten years, its original offer, the district court must determine whether the state can rebut the presumption of vindictiveness which would attach to its offer. If the state can meet its burden, then the parties are free to negotiate a new plea. If the state cannot overcome the presumption and it refuses to reinstate its original offer, then the writ must be granted.

Michigan state prosecutor. Ginther Hr'g at 6. Prior to that time, no plea offer was forthcoming from the prosecutor's office. *Id.* Wartella conveyed to Magana that the state offered to dismiss one cocaine count in exchange for Magana's guilty plea to the other one. Wartella stated that it was his understanding that if Magana pleaded to one cocaine count, he would receive a ten-year sentence. *Id.* He also told Magana that he would receive, at most, a ten-year sentence were he to be convicted at trial. *Id.* at 11. Because Wartella did not believe that the plea bargain offered Magana any benefit over going to trial, he advised Magana to reject the plea offer. *Id.* at 7. Magana then rejected the plea.

Following a jury trial, Magana was convicted of the two cocaine charges and acquitted on the marijuana charge. Joint Appendix ("J.A.") at 35. He was sentenced, pursuant to Michigan Comp. Laws ("M.C.L.") § 333.7401(2)(a)(iii), to two mandatorily consecutive terms of ten to twenty years' imprisonment. That statute states that a person who possesses with intent to deliver more than 50 but less than 225 grams of a controlled substance "is guilty of a felony and shall be imprisoned for not less than 10 years nor more than 20 years." M.C.L. § 333.7401(2)(a)(iii). According to M.C.L. § 333.7401(3), a term of imprisonment imposed pursuant to subsection (2)(a) "shall be imposed to run *consecutively* with any term of imprisonment imposed for the commission of another felony." M.C.L. § 333.7401(3) (emphasis added).

After his conviction and sentencing, Magana filed a motion with the Michigan Court of Appeals seeking an evidentiary hearing, known as a *Ginther* hearing, and a new trial based on his assertion that his trial counsel was constitutionally ineffective for advising him to reject the plea offer. The Michigan Court of Appeals granted the motion for the *Ginther* hearing and remanded to the trial court. *People v. Magana*, No. 166749 (Mich. Ct. App. Apr. 11, 1994) (order granting motion and remanding).

The trial court conducted the *Ginther* hearing on May 2, 1994. At that hearing, Wartella and Magana each testified as

to his understanding of the plea bargain and the potential sentences involved in accepting the plea offer versus going to trial. Magana asserted that, had his trial counsel informed him that his sentences would run consecutively if he was convicted, he would have pleaded guilty. Following the hearing, the trial court held that Magana's trial counsel was not constitutionally ineffective because Magana could not prove that, but for his counsel's faulty advice, he would have accepted the plea. *People v. Magana*, No. 91-2347-FH (Macomb Cty. Cir. Ct. May 5, 1994).

Magana then filed a motion for peremptory reversal in the Michigan Court of Appeals, arguing that the trial court committed plain error by denying his ineffective assistance of counsel claim. The Michigan Court of Appeals denied the motion "for failure to persuade the Court of the existence of manifestly reversible error warranting peremptory relief without argument or formal submission." *People v. Magana*, No. 166749 (Mich. Ct. App. Sept. 7, 1994) (order denying motion). Thereafter, Magana appealed the trial court's decision. The Michigan Court of Appeals affirmed the trial court's finding that Magana had not suffered prejudice from his counsel's failure properly to advise him of his potential sentence should he go to trial, and then remanded the case to the trial court for further findings on a claim of entrapment. *People v. Magana*, No. 166749 (Mich. Ct. App. April 23, 1996). Following the trial court's rejection of Magana's entrapment claim, the Michigan Court of Appeals affirmed the trial court's decision, *People v. Magana*, No. 166749 (Mich. Ct. App. Sept. 20, 1996), and the Michigan Supreme Court denied leave to appeal, *People v. Magana*, No. 107641 (Aug. 29, 1997).

Having exhausted his state remedies, Magana filed a petition for habeas corpus relief in federal district court pursuant to 28 U.S.C. § 2254. The district court denied Magana's petition. According to the district court, "[p]etitioner's counsel testified at the *Ginther* hearing that it was his understanding, and he informed Petitioner accordingly, that each of the cocaine charges carried potential

Q: Okay. And, there's a mandatory minimum on each charge of ten years, is that right?

A: Right, *that it would run concurrent*.

*Id.* at 26 (emphasis added). Although, as the state trial court found, Magana does concede that he had been told at one point that the maximum sentence he could receive was twenty years, we note first that he was exposed to *a potential sentence of forty years' imprisonment*, and he does not appear to have been informed of that fact; and second, that his statement in which he purportedly expressed his understanding of the state statutory sentencing scheme is internally contradictory and hardly reflects a clear appreciation of the risks of going to trial. Although the state trial court apparently weighed Magana's inconsistent testimony and concluded that defendant "knew that, if convicted, he could receive sentences of up to 20 years," we do not believe that Magana's one statement reflecting knowledge of a conceivable twenty-year sentence eliminates the reasonable probability, established by the rest of Magana's testimony at the *Ginther* hearing, that he would have accepted the state's plea offer had he been accurately apprised of his potential prison sentence.

Because the trial court and the Michigan Court of Appeals rendered a decision that was contrary to clearly established Supreme Court precedent, and the record conclusively demonstrates that petitioner is entitled to habeas relief under the correct standard of law, we **REVERSE** the district court's denial of Magana's petition for habeas corpus relief.

## IV. REMEDY

As we noted in *Turner*, a remedy for a Sixth Amendment violation "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Turner*, 858 F.2d at 1207 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). We also noted that because the remedy for a Sixth Amendment violation should "neutralize" the constitutional deprivation

a finding of prejudice). Second, Wartella testified about how Magana reacted to the plea offer he presented either immediately before or on the day of trial. After Wartella told Magana that "he was going to get ten years whether he went to trial or didn't go to trial," Magana then stated that "*[u]nder those circumstances*" he would go to trial. Ginther Hr'g at 13 (emphasis added).

Although, as the state trial court found, the *Ginther* hearing transcript reveals that Magana thought he had two factors that would weigh in his favor if he went to trial, namely that he possessed only 53 grams of cocaine, which was close to the statutory minimum of 50 grams, and that he was a minor player in the scheme, we do not believe that this part of his testimony undermines the rest of his testimony establishing at least a reasonable probability that he would not have gone to trial if he had not been explicitly assured by his counsel that he "was going to get ten years whether he went to trial or didn't go to trial." Ginther Hr'g at 13. Indeed, we note that any defendant who has mentally prepared himself to go to trial because the state has refused to plea bargain with him, as the state here refused until immediately before trial, will have already assessed for himself the relative strengths and weaknesses of the government's case against him. Magana appears to have done just that.

The state trial court also found that Magana gave one indication in the *Ginther* hearing that he had been informed that he could receive a possible twenty-year sentence for the cocaine charges.

Q:  Sir, you were advised of what the maximum or what penalty you were facing in this case, is that right? Did Mr. Wartella tell you — or, you were advised at your arraignment, weren't you, that the maximum penalty in this case was twenty years in prison for delivery of cocaine?

A:  Yeah. *I would get ten if I took the plea, or I lost in trial, but the max would be twenty.*

sentences of ten to twenty years and that those two sentences could not run consecutively." J.A. at 39. The district court also concluded that "[p]etitioner . . . testified that he was aware that each of the cocaine-related charges carried potential sentences of up to twenty years incarceration." J.A. at 42. Because Magana "provided no credible evidence which shows that the state court's conclusion was an unreasonable application of Supreme Court precedent," *id.*, the district court denied Magana's petition for habeas relief.

Magana then filed a motion in the district court seeking a certificate of appealability for his ineffective assistance of counsel claim. The district court denied the certificate of appealability. Thereafter, Magana filed a notice of appeal with this court, which was construed as a motion for a certificate of appealability under 28 U.S.C. § 2253. We granted a certificate of appealability on Magana's sole claim of ineffective assistance of counsel.

### III.  ANALYSIS

#### A.  Standard of Review

When a district court's decision to deny habeas corpus relief under 28 U.S.C. § 2254 is appealed to this court, we review the district court's legal conclusions de novo and its factual findings for clear error. *Palazzolo v. Gorcyca*, 244 F.3d 512, 515 (6th Cir. 2001).

Because Magana's petition for habeas corpus relief was filed in June 1998, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. § 2254, AEDPA governs our review of the state court decisions in this case. According to the amended version of 28 U.S.C. § 2254, we may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The federal court must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The Supreme Court has clarified that the phrases "contrary to" and "unreasonable application of" in 28 U.S.C. § 2254(d)(1) have independent meaning. *Penry v. Johnson*, 121 S. Ct. 1910, 1918 (2001). In order for a state court to render a decision "contrary to" clearly established Supreme Court precedent, the state court must "appl[y] a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confront[] a set of facts that are materially indistinguishable from a decision of" the Supreme Court and nevertheless arrive at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring). An "unreasonable application of" clearly established Federal law may occur, in contrast, when "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. An unreasonable application of law is not, according to the Supreme Court, merely incorrect; rather, "that application must also be unreasonable." *Id.* at 411.

We must, therefore, determine whether the state court's conclusion that Magana was not deprived his right to effective assistance of counsel is contrary to or an unreasonable application of clearly established Federal law.

Q:    Okay. And you just said he advised you they would run concurrent?

***

A:    Yes. Yes.

Q:    Okay. If you had known that they would be stacked, would you have pled guilty?

A:    *I sure would have.* I mean, ten years is a lot better than twenty, knowing that I did have on the delivery, yes, I would have.

*Ginther* Hr'g at 17-18 (emphasis added). Later in the hearing, Magana told the prosecutor that, although he was worried about the marijuana charge because he knew himself to be guilty, *id.* at 22, he thought to himself: "I feel we had some issues and maybe get a lesser charge and at that time I turned down the ten, and I said, *I don't have nothing to lose, let's go to trial.* And at that time, I was always — you know, I said, well, even if I lose to myself, *I would still only get ten, even if all three charges were found guilty, that they would be — run concurrent.*" *Id.* at 24 (emphasis added).

Two objective factors, in addition to the defendant's own declarations, convince us that there was at least a *reasonable probability* that Magana would have accepted the plea offer had he known his true sentencing exposure. First, there is a large disparity in the prison sentences between that which Magana was offered by the state — ten years "on the nose" — and that which he received by virtue of the jury verdict — a minimum of twenty years' and a maximum of forty years' imprisonment. It does not strain reason to believe that Magana would have chosen a flat ten-year sentence instead of risking a possible forty-year term. Indeed, he so testified at the hearing. *See, e.g.*, Ginther Hr'g at 18, 25. *Cf. Gordon*, 156 F.3d at 381 (noting that large disparity between actual sentence and sentence that defendant's counsel represented he would receive if he went to trial provides sufficient evidence, when viewed with the defendant's own testimony, to support

separate opinions in that case which determined that the state court had erred by holding the petitioner to an erroneous legal burden under the Court's relevant precedents then engaged in a de novo review of the petitioner's claim under the controlling law. *See Williams*, 529 U.S. at 396-98 (Stevens, J.) (majority opinion) (analyzing de novo how counsel's errors at sentencing prejudiced petitioner); *id.* at 413-14 (O'Connor, J.) (concurring opinion) (engaging in de novo review after noting that it was "impossible to determine" to what extent state supreme court's erroneous view of the law colored its finding that petitioner suffered no prejudice). In accordance with the Supreme Court's course of action, we will, therefore, engage in a de novo review of Magana's claim of ineffective assistance of counsel. *Cf. Rose*, 252 F.3d at 690 (recognizing that "rather than call into doubt our authority to conduct a de novo review of [petitioner's] ineffective assistance of counsel claim, *Williams* conclusively affirms our authority to conduct such a review" when presented with a state court decision which is contrary to clearly established Supreme Court precedent).

After careful review of the evidentiary hearing transcript and the state trial court's decision, we believe that Magana adequately demonstrated that there was a *reasonable probability* that, but for his counsel's erroneous advice concerning his estimated prison sentence were he to be convicted at trial, he would have accepted the state's plea offer. Magana testified that, when presented with the state's plea offer either immediately before or on the day of trial, he reasoned:

"I said, well, you know, *I don't have nothing to lose* if I'm — you know, *he advised me that they would all run concurrent*, whatever I got, even if I got guilty on the marijuana; you know, and I said, that's what I want to do, go to trial, because, you know, I was trying to get a lesser charge, you know, because it was so close to fifty grams, it wasn't 250 and over, it was fifty and under.

## B. Ineffective Assistance of Counsel

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's performance was constitutionally deficient such that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and that he was prejudiced by his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove constitutionally deficient performance, petitioner must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. If he can meet this standard, then petitioner must establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court's two-part standard for analyzing claims of ineffective assistance of counsel, first articulated in *Strickland*, was clearly established law as of the time Magana brought his state court appeal. *Williams*, 529 U.S. at 413.

The *Strickland* analysis also applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). According to the Supreme Court, a petitioner who asserts that his counsel was constitutionally ineffective for encouraging him to plead guilty must prove both that his counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Following *Lockhart*, we have held that a petitioner who claims that his counsel was ineffective for encouraging him to reject a plea bargain and go to trial states a viable Sixth Amendment claim. *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902 (1989), *reinstated on other grounds*, 940 F.2d 1000, 1002 (6th Cir. 1991). Such a petitioner must prove both deficient performance on the part of his counsel and that,

but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty.[1] *Turner*, 858 F.2d at 1206; *see also Paters*, 159 F.3d at 1046 (requiring defendant to show that "there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice"); *Gordon*, 156 F.3d at 380 (applying "reasonable probability" standard to claim that defense counsel's gross misadvice regarding potential sentencing exposure violated defendant's Sixth Amendment rights); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992) (noting that defendant who claims that his counsel's gross underestimation of his sentence led him to reject state's plea offer must meet the "reasonable probability" standard to prove prejudice).

## C. State Court Decisions

After the *Ginther* hearing, the state trial court concluded that Wartella had informed Magana that, in exchange for Magana's guilty plea, the state "would recommend a minimum sentence of 10 years." Appellee's Br. at 9. According to the trial court, Wartella also "believed any sentences defendant would receive following a trial would run concurrent not consecutive and didn't believe defendant would receive any benefit by pleading guilty." *Id.* The court then found the following as to Magana:

---

[1] The Seventh and Second Circuits have held that a defendant's post-conviction testimony that he would have accepted the plea is insufficient to establish prejudice. Instead, those courts have required the defendant to come forward with additional objective evidence to prove that the defendant would have accepted the plea offer. *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998). Our circuit has not explicitly adopted such a requirement, although in *Turner* this court approved of a district court's decision which concluded that the defendant had offered sufficient objective evidence, in that he made a counter-offer to the government, that he would have accepted the government's plea. *Turner*, 858 F.2d at 1207. *Strickland*, however, only requires that a defendant demonstrate that there is a "reasonable probability" that the result of the proceeding would have been different. The Supreme Court has imposed no requirement that the defendant meet his burden of proof through objective evidence.

but for his counsel's erroneous advice, there is a *reasonable probability* that he would have accepted the plea. When we compare the Michigan Court of Appeals's legal formulation of a claim of ineffective assistance of counsel at the plea bargaining stage with that of the United States Supreme Court, it is clear that the Michigan Court of Appeals's standard placed too great a burden of proof on the defendant to show prejudice: under that state court's definition, a defendant must demonstrate, not just a "reasonable probability," but an absolute certainty that the outcome of the proceedings would be different. *Cf. Day*, 969 F.2d at 45 n.8 (noting that "*Strickland v. Washington* does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only 'reasonable probability' that that is the case"). Holding Magana to this more exacting standard was, we believe, contrary to clearly established Supreme Court precedent. *See Williams*, 529 U.S. at 405-06 (hypothesizing that a state court which held that *Strickland* standard for ineffective assistance of counsel required prisoner to establish by a preponderance of the evidence, as opposed to a reasonable probability, that result of proceedings would have been different would be contrary to clearly established Supreme Court precedent); *see also Rose v. Lee*, 252 F.3d 676, 689 (4th Cir. 2001) (noting that it was "contrary to" clearly established Supreme Court precedent for state habeas court to require petitioner to prove prejudice under *Strickland* by a preponderance of the evidence); *Mask v. McGinnis*, 233 F.3d 132, 140 (2d Cir. 2000) (concluding that state trial court which failed to employ "reasonable probability" standard when evaluating claim of ineffective assistance of counsel during plea negotiation unreasonably applied clearly established Supreme Court precedent).

## D. Appropriate Habeas Relief

In *Williams*, the Supreme Court evaluated whether a state court had incorrectly framed its legal analysis of the petitioner's ineffective assistance of counsel claim in light of clearly established Supreme Court precedent. Two of the

A:  No, I wasn't aware of that. My impression, and it still is, that the maximum that he could get for one transaction was ten years.

*Id.* at 11-12 (emphasis added). To dispel any doubt as to whether Wartella did not understand the relevant statute, the prosecutor asked:

Q:  Did you tell [Magana] what the maximum/minimum could be in this case?

A:  Yes. I told him that — no, I didn't. *I told him that he was going to get ten years whether he went to trial or didn't go to trial.*

*Id.* at 13 (emphasis added). As both the state courts and the district court appear to have conceded, Wartella's complete ignorance of the relevant law under which his client was charged, and his consequent gross misadvice to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms.

Therefore, this case hinges, not on whether Wartella's performance was inadequate, but rather on whether the Michigan Court of Appeals's conclusion that Magana could not prove prejudice was contrary to or an unreasonable application of clearly established Supreme Court precedent. In its review of the state trial court's decision, the Michigan Court of Appeals affirmed the trial court's conclusion that the relevant legal standard against which Magana's claim should be measured was the following: "If the trial court determines that the defendant would not have accepted the offer, then the defendant was not prejudiced and is not entitled to relief on his ineffective assistance claim." *People v. Magana*, No. 166749 (Mich. Ct. App. April 23, 1996). As discussed earlier, however, under *Strickland* and *Lockhart*, the applicable Supreme Court precedents, a defendant who claims that his trial counsel gave him gross misadvice about whether to accept or reject a plea offer must prove (1) that his counsel's performance was objectively deficient, and (2) that

He confirmed counsel had apprised him of the plea offer. He was also aware the people had offered to dismiss two charges and recommend a sentence of 10 years on the charge of delivery of cocaine. Further, defendant testified he was aware the cocaine charges carried penalties of up to 20 years incarceration. Defendant stated he believed the offer was a good offer but he felt he could win at trial since he had some good issues . . . .

*Id.* The trial court then concluded:

Defendant knowingly rejected the plea offer. He was aware it was a good offer in light of the potential penalties he was facing. However, he believed he would not be convicted or, at the least, he would be convicted of a lesser offense and/or receive lesser sentences. Even assuming defendant believed he would receive concurrent sentences for his convictions, by defendant's own testimony he knew that, if convicted, he could receive sentences of up to 20 years. It is clear from defendant's testimony that he chose to take a chance by going to trial.

*Id.* at 10. Based on these determinations, the trial court concluded, as a matter of law, that Magana's counsel was not ineffective. The trial court stated that "defendant would not have accepted the plea offer so that he was not prejudiced by counsel's representation. Therefore, defendant is not entitled to relief. . . ." *Id.*

On appeal, the Michigan Court of Appeals stated that, under relevant Michigan law, if the defendant can prove that he would have accepted the plea offer, then the defendant was prejudiced and he would be entitled to relief. If, however, the trial court determined that the defendant would not have accepted the offer, then the defendant was not prejudiced and is not entitled to relief on his ineffective assistance claim. *People v. Magana*, No. 166749, at 2 (Mich. Ct. App. April 23, 1996). The Court of Appeals then deferred to the trial court's finding. The Court of Appeals stated: "[W]e conclude that the trial court's finding that defendant would

not have accepted the plea offer is supported by the record. Defendant testified that he felt that he could win at trial or that he would be convicted of a lesser offense. He also testified that he was aware that the maximum sentence he could get would be twenty years' imprisonment." *Id.* Because it concluded that the trial court's finding that Magana would not have accepted the plea was not clearly erroneous, the Michigan Court of Appeals held that Magana was not prejudiced and was not, therefore, entitled to relief. *See id.*

Both the state trial court and Michigan Court of Appeals concluded that, even if trial counsel's performance was constitutionally deficient, Magana could not prove prejudice because he did not establish that, but for his trial counsel's erroneous advice, he would have accepted the plea. Because the state courts did not discuss the question of deficient performance, we will assume that they concluded that Wartella's performance was objectively deficient under *Strickland*. Indeed, it would be hard to imagine how Wartella's advice during the plea negotiation process could have been more inadequate. At the *Ginther* hearing, he testified as to his understanding of the state's plea offer as follows: "[M]y understanding of the plea agreement was, if he pled on the nose, he'd get ten years, and that's the information that I am imparting to Mr. Magana." Ginther Hr'g Tr. at 6. He then stated that he advised Magana, either immediately before or on the day of trial, that "he had nothing to lose, since they weren't going to do anything. They weren't going to offer him anything, so he might just as well go to trial." *Id.* at 7. The following exchange then occurred:

Q: Why was it your impression that he had nothing to lose?

A: Well, my impression, and my impression is still, that you can't stack concurrent offenses. You can't make them run consecutively. . . .

\*\*\*

A: Obviously I'm wrong, but I still feel that you can't stack sentences for the same offense, even though there is a conspiracy involved. And I understand conspiracy law is kind of convoluted, but that's still my impression.

Q: So, to clarify, did you ever tell Mr. Magana that a conviction for delivery and a conviction for conspiracy in his drug delivery could run consecutive?

A: *No, I never told him that*.

*Id.* (emphasis added). On cross-examination by the state, the prosecutor asked:

Q: Had you advised him of what the maximum penalty would be in this case?

A: If you were convicted on all three charges?

Q: Yes.

A: Yeah, *I advised him it would be ten years*.

Q: That's what you told him?

A: Yes.

\*\*\*

Q: Sir, did you advise your client that in each case there was a mandatory minimum of ten years if convicted?

A: No.

Q: You didn't tell him that?

A: No, I didn't.

Q: Were you aware of that?