NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0163n.06

**Case No. 16-6531**

<table>
<tr><td>

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

</td><td>

**FILED**
Mar 28, 2018
DEBORAH S. HUNT, Clerk

</td></tr>
</table>

| | | |
|---|---|---|
| PHILLIP THOMPSON, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | O P I N I O N |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: COOK, McKEAGUE, and STRANCH, Circuit Judges.

**McKEAGUE, Circuit Judge.** Appellant Phillip Thompson pleaded guilty to two bank robbery charges and three firearms offenses and was sentenced to forty years in prison. Thompson pleaded guilty to all five counts without a plea agreement. In the process, he alleges that he declined the prosecution's offer of a 15-year plea deal. He refused the deal, against advice of counsel, in reliance on counsel's estimate that he would otherwise likely face a sentence of just 16 to 19 years. By refusing to plead guilty pursuant to agreement, Thompson preserved the right to challenge his sentence on appeal and hoped to win a reduction of the sentence. Had he known he was actually risking exposure to a 40-year prison sentence, Thompson contends he certainly would have accepted the prosecution's offer. Because his attorney's estimate was so wildly off-target, Thompson contends he was denied effective assistance of counsel. The district court denied Thompson's motion to vacate his sentence under

28 U.S.C. § 2255. On appeal, Thompson asks the court to vacate the judgment and remand with instructions ordering imposition of a sentence of fifteen years, in accordance with the prosecution's original offer. Finding the record to be materially incomplete, we vacate and remand for an evidentiary hearing.

## I. BACKGROUND

A five-count indictment was filed in the Western District of Tennessee on January 13, 2010. Counts 1 and 3 charged defendant Phillip Thompson with two bank robberies, in violation of 18 U.S.C. § 2113(a); Count 2 charged him with knowingly using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); Counts 4 and 5 charged Thompson, having previously been convicted of a felony, with possession of a firearm and ammunition, respectively, in violation of 18 U.S.C. § 922(g). Thompson admitted that he committed two bank robberies in Memphis on December 17, 2009, that he possessed and used a firearm and ammunition in relation to the robberies, and that he fired shots from a rifle while police officers were chasing him before he was arrested.

Eventually, plea negotiations between the government and Thompson's attorney, Marty McAfee, came to revolve around the possibility of a Rule 11(c)(1)(C) agreement that would have resulted in a prison sentence of 15 years, if accepted by the district court. Attorney McAfee recommended that Thompson accept the offer, estimating that he could otherwise face a sentence of "70–87 months consecutive to 10 years." McAfee advised Thompson that this was merely an estimate, but he had checked with a sentencing expert in the probation department for assurance that his estimate was reliable. Against counsel's advice, Thompson rejected the offer and, when the government rejected Thompson's counter-offer of a binding agreement for a ten-year sentence, Thompson pleaded guilty as charged without any agreement. Thompson explained in

his affidavit that, rather than accept the putative 15-year deal, he preferred to preserve his right to challenge the eventual sentence.

Before Thompson tendered his guilty plea, the district court undertook the obligatory plea colloquy, advising Thompson of the potential penalties for the charged offenses. Specifically, the court advised Thompson that he was subject to a prison term of up to 20 years on each of the bank robbery counts; a prison term of seven years to life on the Count 2 charge of using a firearm in connection with a bank robbery; and a sentence of up to ten years on each of the felon-in-possession charges. The court further advised that the sentence would be imposed by the court after preparation of a presentence report, with reference to the advisory sentencing guidelines. The court inquired of Thompson whether he understood that the sentence actually imposed "may be different from any estimate of the sentence that your counsel, government counsel, or anyone else may have given to you?" Thompson said he understood.

The district court then proceeded to receive the government's proffer of evidence it expected to produce to establish the charged offenses. Thompson acknowledged and agreed, under oath, that the government would be able to present the proffered proofs, with one exception: he disagreed with the representation that he had fired the rifle *at the pursuing officer*. Nonetheless, Thompson confirmed that he still wanted to plead guilty to the charged offenses, whereupon the court accepted his plea and adjudged him guilty as charged, and referred the matter for preparation of the presentence report.

The presentence report was prepared in January 2012. After Thompson received the report, indicating he faced a much longer prison sentence than anticipated, he had little contact with attorney McAfee before sentencing, in June and July 2012. Thompson avers that he tried to contact McAfee to discuss the possibility of withdrawing his plea, but received no response.

Otherwise, during this several-month interval, the record gives no indication of Thompson's objection to the presentence report's assessment, no indication of dissatisfaction with McAfee's representation, and no indication of an effort to withdraw his plea. The sentencing hearing commenced on June 20, 2012, but sentence was not imposed because late objections were raised that suggested the need for additional fact finding. The sentencing hearing was continued on July 19, 2012.

At issue in the second hearing, in relevant part, was the potential "official victim" offense-level adjustment based on Thompson's having fired numerous rounds from a rifle at a pursuing officer following the second robbery. This version of events was confirmed by the testimony of the pursuing officer, Memphis Police Officer John Standridge. Standridge said he observed the driver of the robbery suspect's vehicle lean out of the window with an assault rifle and fire at least a dozen shots in his direction from a distance of 70 to 75 feet. In response, Thompson relied on the written statement he'd given to police when arrested, indicating he had fired shots "to hopefully get the officer to stop or slow down so I could get away," and adding, "I wasn't trying to hit him." R. 68 (No. 2:10-cr-20010), Sent. Tr. at 92, Page ID 221. The district court found the officer credible, found that Thompson had fired at the pursuing squad car, and applied a six-point offense-level adjustment, plus a two-point increase for reckless endangerment. And having found that Thompson made a false statement regarding his intent in firing the rifle, the court withdrew his acceptance-of-responsibility credit, further increasing the offense level.

Consequently, the district court arrived at an advisory guidelines range of 324 to 405 months for the Counts 1 and 3 bank robbery charges and imposed a sentence of 20 years on each

count, to run concurrently.[1]  The court determined that a ten-year mandatory minimum sentence applied to the Count 2 charge for use of the firearm in relation to a robbery, to run consecutively. Finally, the court imposed concurrent sentences of ten years for each of the Counts 4 and 5 felon-in-possession charges, to be served consecutively to the other (20-year and 10-year) sentences, resulting in a total term of 40 years' imprisonment.

Thompson's sentence was affirmed on direct appeal.  The court rejected Thompson's only claim of error, i.e., that he was wrongly denied an offense-level reduction for acceptance of responsibility.  *United States v. Thompson*, 531 F. App'x 549 (6th Cir. 2013).  Again, there was no hint of dissatisfaction with McAfee's representation in the district court proceedings or of a frustrated desire to withdraw his guilty plea.

Less than two months later, Thompson, proceeding *pro se*, filed his motion to vacate the sentence under 28 U.S.C. § 2255.  The district court allowed several amendments of the motion before denying it in its entirety on August 4, 2016.  The district court also denied Thompson's motion for an evidentiary hearing and declined to certify the case for appeal.  We certified the following issues:

> whether counsel rendered ineffective assistance during plea negotiations, whether Thompson's ultimate plea deal precludes his claim for ineffective assistance during those plea negotiations, and whether the district court should have conducted an evidentiary hearing on that ineffective-assistance claim.

R. 12, Order, Apr. 13, 2017.  We also appointed counsel to represent Thompson in this appeal. Of the three issues certified, only the first and third are actually disputed.  The government has conceded that Thompson's decision to plead guilty does not preclude his claim for ineffective assistance in plea negotiations leading up to that decision.

---

[1] Also contributing to the disparity between this range and the 70 to 87 months originally estimated by McAfee was McAfee's incorrect assumption that Thompson's criminal history would place him in criminal history category I rather than III.

## II. ANALYSIS

### A. Standard of Review

The denial of Thompson's § 2255 motion is, in its legal conclusions, reviewed de novo and, in its factual findings, reviewed for clear error. *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009). The denial of Thompson's request for an evidentiary hearing is reviewed for abuse of discretion. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003).

### B. Ineffective Assistance

The relevant standards governing an ineffective-assistance claim are succinctly stated in *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012), confirming that a defendant is entitled to effective assistance of competent counsel in plea negotiations. To prevail on a claim that he was denied effective assistance, a defendant must meet the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The performance prong of the *Strickland* test requires a defendant to show that counsel's representation fell below an objective standard of reasonableness. *Lafler*, 566 U.S. at 163. The prejudice prong requires a defendant to show that there is a reasonable probability the outcome of the plea process would have been different had he received competent advice. *Id.*

Thompson contends that attorney McAfee's estimate of the likely length of his sentence, in the range of 16 to 18 years, being less than half as long as the sentence imposed, was so inaccurate as to have undermined his ability to intelligently evaluate the government's offer of a 15-year plea deal. Thompson acknowledges that McAfee advised him to accept the offer, but contends he had no idea he was risking exposure to a prison sentence of 40 years or more by rejecting it and pleading guilty without an agreement. Had McAfee given more accurate advice, Thompson attests in his affidavit that he would have accepted the government's offer.

The district court rejected this claim even as it acknowledged that "[a] criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." R. 38 (No. 2:13-cv-2737), Order at 28, Page ID 285 (quoting *Smith*, 348 F.3d at 553). Yet, the court held that an erroneous sentencing guidelines prediction does not justify setting aside the guilty plea, citing *United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993). The court noted that, irrespective of McAfee's miscalculation, he had recommended acceptance of the government's offer. The decision to reject the offer was thus deemed to be Thompson's, because he wanted to preserve his right to appeal the sentence. The court determined that McAfee's representation was not deficient. Moreover, the court noted that the record did not substantiate Thompson's allegation that the government had in fact offered him a valid plea agreement. And finally, the court held that the plea colloquy indicates Thompson understood that he could not rely on his attorney's sentencing estimate and that he knowingly pleaded guilty. On appeal, Thompson challenges the district court's ruling on several grounds.

1. *Deficient Performance*

First, Thompson contends, citing *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001), that McAfee's miscalculation amounted to "gross misadvice" that "certainly fell below an objective standard of reasonableness under prevailing professional norms." *Id.* at 550. In *Magana*, the defendant was charged with two cocaine trafficking offenses. The prosecution offered to dismiss one count in exchange for a guilty plea on the other, which would have resulted in a mandatory minimum sentence of ten years. Magana's counsel erroneously believed that, if his client were convicted of both offenses in trial, he would face the possibility of two ten-year sentences—that would, however, run *concurrently*. Seeing no practical advantage in pleading guilty, he advised

Magana to reject the offer. Magana rejected the offer, went to trial, was convicted of both offenses, and was sentenced to two ten-year sentences, to be served *consecutively*, per statutory mandate. *Id.* at 544–45. In denying post-conviction relief on Magana's ineffective-assistance claim, the state courts effectively assumed that his attorney's performance was deficient. Magana was held to have not shown prejudice, however, because he believed he could win at trial and had not shown that he would have accepted the plea offer even if he had been better informed of the potential sentence. *Id.* at 545, 548–50. In habeas review, Magana was held to have shown a "reasonable probability" that he would have accepted the prosecution's plea offer if he had been afforded effective assistance. The writ was conditionally granted, requiring the state to grant Magana a new plea hearing. *Id.* at 552–53.

*Magana* is both analogous and distinguishable. In relation to the deficient performance prong, the magnitude of McAfee's miscalculation is similar to Magana's counsel's. However, Magana's counsel's error was clearer and less defensible than McAfee's. Magana's counsel demonstrated "complete ignorance of the relevant law under which his client was charged." *Id.* at 550. In fact, Magana's counsel resolutely—and erroneously—maintained that the *maximum* sentence Magana faced, whether he pleaded guilty to one offense or was found guilty of both offenses, was ten years. *Id.* Magana relied on the misadvice, followed his attorney's recommendation, and rejected the offered plea agreement.

In contrast, McAfee, in counseling Thompson, made it "clear that the best [he] could provide, short of receipt of the PSI Report, was an estimate of his punishment exposure under the Guidelines." R. 25 (No. 2:13-cv-2737), McAfee Aff. at 3, Page ID 168. Moreover, in reaching his estimate, McAfee had, quite reasonably, consulted with a sentencing expert in the probation

department for assurance that his estimate was reliable. *Id.*[2] In those discussions, however, McAfee apparently failed to consider or mention the impending dispute regarding shots fired during the police chase. This oversight accounts for most of the disparity between McAfee's estimate and the sentence actually imposed.[3] While McAfee was aware of the impending factual dispute, his affidavit is devoid of explanation for his failure to factor it into his projected-sentence calculations.[4] Yet, despite his error, McAfee did advise Thompson to accept the prosecution's offer. Unlike Magana, who *followed* his attorney's "gross misadvice" in rejecting the prosecution's favorable plea offer and later regretted it, Thompson *rejected* McAfee's recommendation to accept the plea offer and now regrets that he didn't follow counsel's advice. Hence, in comparison with counsel's deficient performance in *Magana*, the shortcoming in McAfee's performance does not fall as certainly below the objective standard of reasonableness.

It follows that *Magana* does not compel the conclusion that McAfee's performance was deficient in a constitutional sense. The instant facts pose a closer question. In *Pough v. United States*, 442 F.3d 959 (6th Cir. 2006), we stated that to establish deficient performance in plea

---

[2] Based on information provided by McAfee, Sentencing Guidelines Specialist Judy Palmer had arrived at an advisory guidelines range of 87 to 108 months, plus ten consecutive years—not substantially different from McAfee's original estimate. R. 13-2 (No. 2:13-cv-2737), Email dated 10/13/11, Page ID 90.

[3] McAfee failed to recognize the extent to which the potential adjustment for shots fired at an officer could result in a substantial offense-level increase. In addition, although McAfee advised Thompson that he could face a longer sentence if he engaged in a credibility contest with the pursuing officer over how he aimed the rifle when the shots were fired, he did not anticipate the loss of credit for acceptance of responsibility. Further, McAfee erroneously estimated that Thompson's past misconduct placed him in criminal history category I rather than III. These three errors substantially account for the difference between the estimated guidelines range and the range arrived at by the district court.

[4] McAfee's affidavit confirms that he knew about the dispute, but *implies* his belief that the government might not be able to preponderate: "The testimony at the sentencing hearing regarding the shots fired at the officer pursuing him was much more graphic and detailed than what I had seen in the discovery." R. 25 (No. 2:13-cv-2737) McAfee Aff. at 2–3, Page ID 167–68. Still, uncertainty regarding the facts hardly excuses McAfee's failure to explore the sentencing possibilities with Thompson.

bargaining, the defendant "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *Id.* at 966 (quoting *United States v. Cieslowski*, 410 F.3d 353, 358–59 (7th Cir. 2005)).  On the present record, Thompson has hardly met this standard.  McAfee learned the facts of the case—or at least most of them—and *appears* to have made a good-faith, albeit erroneous, estimate of the likely sentence.

But the standard applied in *Pough* does not exclude the possibility that, considering the uncertain operation of the sentencing guidelines, a good-faith but markedly erroneous estimate of the likely sentence could be deemed objectively unreasonable.  In this regard, *Smith v. United States* is instructive:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.  In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Smith*, 348 F.3d at 553.  Competent representation thus demands that counsel explore the range of penalties a defendant is facing under likely guidelines calculation scenarios as completely as possible.  "The failure of defense counsel to 'provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance.'" *Id*. (quoting *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)).  Because the record was unclear as to whether Smith's counsel had adequately explained his sentence exposure, the court vacated the denial of § 2255 relief and remanded for an evidentiary hearing. *Id.* at 553–54.

Here, given that McAfee knew of the likelihood of enhancement for shots fired at an officer and admits that he did not completely explore the impact of an adverse finding on the

potential sentence—either in his own estimate or in his discussions with Thompson, his advice arguably fell short of the "professional guidance" standard set forth in *Smith*. Here, as in *Smith*, an evidentiary hearing would have permitted a fuller development of the facts, to fill the gaps left by McAfee's and Thompson's affidavits. The district court's determination that McAfee's representation was not objectively unreasonable thus appears to have been premature. Yet, the court's refusal to grant Thompson a fuller opportunity to show deficient performance is immaterial unless he can also show that prejudice resulted—i.e., that the deficiency was a "decisive factor" in his decision to plead guilty as charged. *Pough*, 442 F.3d at 966.

### 2. *Prejudice*

Even if McAfee's miscalculation is presumed to satisfy the *Strickland* deficient-performance prong, Thompson is not entitled to relief absent a showing of prejudice. Unlike the *Magana* situation, and despite his miscalculation, McAfee *did* advise Thompson to accept the plea offer. Thompson's "injury" thus resulted most proximately from *his* disregard of counsel's advice. It can hardly be denied, however, that McAfee's recommendation to accept the plea deal would have been stronger had he more completely examined the potential sentence. Thompson avers that he would have followed McAfee's advice and accepted the government's offer had he been informed of his actual sentencing exposure. Thompson's affidavit thus tends to support the requisite showing of a reasonable probability that McAfee's estimate was a decisive factor and the outcome of the plea process would have been different if he had received competent assistance.

But what if there was no valid offer of a plea agreement? The district court remarked that "[t]he greater weight of the evidence in the record suggests that the Government never offered Thompson a valid plea agreement." R. 38 (No. 2:13-cv-2737), Order at 29, Page ID 286. If true,

Thompson's showing of prejudice would be severely undermined. The accuracy of the district court's characterization of the record, however, is questionable.

Thompson's affidavit states that the proposed 15-year plea agreement he ultimately rejected had been approved by the government and reduced to writing at the time of the October 20, 2011 change-of-plea hearing. McAfee's affidavit acknowledges that there were plea negotiations, but states only that the 15-year plea offer had not been approved in October 2011, "as the guilty plea loomed," when Thompson advised that he did not want to accept it. The government has neither acknowledged nor disputed the existence of the plea offer, either in preliminary or final approved form, and has offered no evidence or clarification of the status of any plea offer at the time of the change-of-plea hearing. Instead, the government attacks Thompson's affidavit as self-serving and otherwise unsubstantiated. This, essentially, is the sum total of record evidence going to the existence of a proposed plea agreement.

In sum then, Thompson's sworn representation that he was presented a written and approved copy of the 15-year plea agreement, albeit self-serving, stands unrefuted. Moreover, it is partially corroborated by McAfee's confirmation that there were negotiations involving a 15-year plea deal that had not yet ripened into an approved agreement in the days leading up to the change-of-plea hearing. The record is artificially truncated due to the denial of Thompson's motions for an evidentiary hearing and for discovery, but the weight of the extant evidence actually favors a finding that there *was* a proposed agreement.

The government insists that the district court made a finding of fact that cannot be disturbed unless clearly erroneous. Not so. If the court had made a finding of fact, we would be constrained to find clear error. Yet, though the district court's characterization of the record is

inaccurate, its observation of what the evidence "suggests" hardly amounts to a "finding." Let's

consider the context of the observation. In the next paragraph of the opinion, the court reasoned:

> McAfee not only attempted to obtain a plea agreement for Thompson through negotiation with the Government, but counseled Thompson to accept an agreement if and when the Government approved one in light of sentencing range estimates he had made . . . .

*Id.* at 30, Page ID 287. The court then quoted at length from the plea colloquy—demonstrating

that Thompson understood the court could impose a sentence different from any estimate that

McAfee or any other person may have given him—before summarily concluding that Thompson

had failed to show McAfee's performance was deficient.

The district court's observations are not irrelevant, but they have more to do with the

prejudice prong than the performance prong. If there never was a valid plea offer, then,

irrespective of McAfee's "gross misadvice" in estimating the sentence, Thompson would be

hard-pressed to show a reasonable probability that the outcome of the plea process would have

been different with competent advice. Yet, because the existing record is incomplete as to the

status of the plea offer at the time of Thompson's plea, the district court could hardly make a

finding that there was no valid plea offer. The court was thus content to comment on what the

evidence suggests—to buttress conclusions it would draw from the plea colloquy. And these

conclusions, too, relate more to the prejudice prong than the performance prong.

Indeed, as the government argues, the Sixth Circuit has consistently upheld the validity of

the plea-colloquy advisement of rights to preclude later claims of misunderstanding alleged to

result from misleading advice. Most recently, the court observed:

> When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. *Ewing v. United States*, 651 F. App'x. 405, 410 (6th Cir. 2016) (citing

> *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)). The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. *Id.* Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood. *Ramos*, 170 F.3d at 566.

*United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017). This rule would appear to apply, as Thompson alleges he misunderstood the potential consequences of his guilty plea due to McAfee's erroneous advice. The plea colloquy appears to have been proper, clear and thorough. It establishes, based on Thompson's own testimony under oath, that he understood the potential penalties for the charged offenses; that he had discussed the sentencing guidelines with attorney McAfee; and that the sentence ultimately imposed by the district court may be different from any estimate given to him by McAfee, government counsel, or anyone else.

But Thompson contends the plea colloquy rule does not apply. He cites a footnote in *Cadavid-Yepes v. United States*, 635 F. App'x 291, 300 n.3 (6th Cir. 2016), for the proposition that there are exceptions to the rule. The note contains only dicta, however, and does little to help Thompson's cause. In *Cadavid-Yepes*, the court faithfully applied the rule and noted that recent Supreme Court opinions said to have abrogated the rule are actually consistent with it.

Thompson nonetheless maintains that because McAfee's misadvice pertained to a plea deal distinct from the guilty plea he actually entered, the plea colloquy in the change-of-plea hearing was ineffective to cure McAfee's earlier misadvice. He cites *Missouri v. Frye,* 566 U.S. 134 (2012), as illustrative. The *Cadavid-Yepes* court addressed the argument as follows:

> [I]n *Missouri v. Frye,* Frye's attorney never told Frye about a plea offer from the government and the offer expired. Frye later pleaded guilty without any plea agreement, unaware of the earlier offer. . . . Frye was never given a plea colloquy capable of curing his counsel's deficient performance.

*Cadavid-Yepes*, 635 F. App'x at 300 n.3 (citations omitted).  Because of the nature of Frye's counsel's nonfeasance and Frye's ignorance thereof, the colloquy advisement of rights could not have the effect of curing or correcting Frye's lack of knowledge.

Here, in contrast, Thompson's ineffective-assistance claim ultimately depends on his showing that, but for McAfee's erroneous estimate of the likely sentence if he pleaded guilty without a plea agreement—which estimate McAfee undisputedly communicated and Thompson considered before rejecting McAfee's advice—there's a reasonable probability that he would not have pleaded guilty as charged.  That is, Thompson's claim hinges on his alleged reliance on McAfee's erroneous estimate.  And in the plea colloquy conducted on October 20, 2011, as Thompson proceeded to plead guilty without a plea agreement, the district court elicited Thompson's testimony that he understood the potential penalties, had discussed the guidelines with McAfee, and understood the court could impose a sentence different from any estimate he had been given by McAfee or anyone else.  The plea colloquy thus establishes Thompson's understanding that McAfee's estimate was not necessarily reliable; that it was the district court that had authority to impose sentence in its discretion, under the law and the guidelines, after considering the presentence report and the parties' objections and arguments.  *Frye* is thus materially distinguishable.

It follows that the colloquy's advisement of rights may be deemed to have cured any misunderstanding arising from McAfee's miscalculation. But given the incompleteness of the record, we are ill-equipped to reach that conclusion without knowing more, if possible, about the nature and the cause of the misunderstanding.  We do not fault Thompson for the sparse record on this issue; the district court denied his motions to conduct discovery and for an evidentiary hearing.

### C. Evidentiary Hearing

In his alternative argument, Thompson contends the denial of his ineffective-assistance claim was in error because it was premature. The ruling was premature, he argues, because the undeveloped record is marked by unresolved questions of material fact. The district court denied Thompson's requests for discovery, for an evidentiary hearing, and for appointment of counsel because it concluded that his ineffective-assistance claim failed as a matter of law. R. 38 (No. 2:13-cv-2737), Order at 34, Page ID 291. Thompson asks us to remand for an evidentiary hearing to complete the record.

The denial of an evidentiary hearing is reviewed for abuse of discretion. *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). The burden, however, that Thompson must bear to show entitlement to a hearing is "relatively light." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *United States v. Turner*, 183 F.3d 474, 477 (6th Cir. 1999)). "Unless the motion [for relief under § 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255(b). "[W]hen a defendant presents an affidavit containing 'a factual narrative of the events that is neither contradicted by the record nor inherently incredible' and the government offers nothing more than 'contrary representations' to contradict it, the defendant is entitled to an evidentiary hearing." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine*, 488 F.3d at 334).

As explained above, the existing record leaves fact questions unresolved. Thompson's affidavit sets forth a narrative that is neither contradicted by the record nor inherently incredible. It is partially corroborated, not contradicted, by his attorney's affidavit. We share the district court's skepticism about the notion that the government would offer such a generous 15-year

deal to a defendant who was essentially "caught in the act." Yet, the government has not even made "contrary representations," much less adduced evidence, refuting Thompson's affidavit. Nor are we persuaded, at this stage, that the record conclusively shows that Thompson is entitled to no relief. Under our precedents, analogous circumstances have been repeatedly held to warrant a hearing. *See e.g.*, *Pola v. United States*, 778 F.3d 525, 532–35 (6th Cir. 2015); *Huff*, 734 F.3d at 607–10; *Valentine*, 488 F.3d at 333–34; *Smith*, 348 F.3d at 550–54; *Christopher v. United States*, 605 F. App'x 533, 537–38 (6th Cir. 2015). The same approach is appropriate here, as Thompson has carried his "relatively light burden."

The district court's denial of Thompson's request for an evidentiary hearing was based on an inaccurate assessment of an incomplete factual record resulting in premature conclusions of law. Consequently, the court erred in its determination that the motion for an evidentiary hearing was moot. Among the unresolved questions warranting further development: whether the government offered a valid approved written 15-year plea agreement before Thompson entered his guilty plea; what justification McAfee may provide for having failed to completely explore the impact of the "shots fired" adjustment; and specific details regarding McAfee's recommendation that Thompson accept the government's plea offer, rather than pleading guilty as charged without a plea agreement. The answers to these and other questions could contribute significantly to a fair assessment of both prongs of Thompson's ineffective-assistance claim.

### III. CONCLUSION

Accordingly, finding that the existing record presents unresolved fact questions going to both the deficient-performance and prejudice prongs of Thompson's ineffective-assistance-in-plea-negotiations claim, and concluding that denial of Thompson's request for an evidentiary hearing was in error, the order denying Thompson's § 2255 motion is **VACATED** *only insofar*

*as it hinges on the issues certified in this appeal*, and the case is **REMANDED** for an evidentiary

hearing limited to the issues addressed in this opinion.